UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 09-31449 (LMW) |
| | ) | | |
| CLAUDIO MUCCI, | ) | CHAPTER | 7 |
| | ) | | |
| DEBTOR. | ) | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - -

| | | | |
|---|---|---|---|
| RIGONI DI ASIAGO S.P.A. and ANDREA RIGONI, | ) | ADV. PRO. NO. | 09-3078 |
| | ) | | |
| | ) | ECF NOS. | 1, 55, 60 |
| PLAINTIFFS | ) | | |
| | ) | | |
| vs. | ) | | |
| | ) | | |
| CLAUDIO MUCCI, | ) | | |
| | ) | | |
| DEFENDANT. | ) | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - -

**APPEARANCES**

Robert A. White, Esq.                          Attorneys for the Plaintiffs
Meredith C. Burns, Esq.
Murtha Cullina, LLP
CityPlace I - 185 Asylum Street
Hartford, CT 06103-3469


Neil Crane, Esq.                               Attorneys for the Defendant
Stuart Kaplan, Esq.
Law Offices of Neil Crane
2700 Whitney Avenue
Hamden, CT 06518


**MEMORANDUM OF DECISION:**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**


Lorraine Murphy Weil, Chief United States Bankruptcy Judge


        This is an action seeking a determination that a certain judgment (ECF No. 55-4, the "District

Court Judgment") against the above-referenced debtor (the "Debtor") held by one or more of the

above-referenced plaintiffs is a nondischargeable debt pursuant to 11 U.S.C. §§ 523(a)(4) and/or

523(a)(6).  Before the court are (a) Rigoni de Asiago S.p.A.'s and Andrea Rigoni's (collectively, the

"A.P. Plaintiffs") Motion for Partial Summary Judgment (ECF No. 55, the  "S/J Motion")[1] with

respect to the District Court Judgment and (b) the Debtor's objection (ECF No. 60, the "S/J

Objection") thereto.  This court has jurisdiction over this proceeding as a core proceeding under 28

U.S.C. §§ 157(b) and 1334(b) and that certain Order dated September 21, 1984 of this District (Daly,

C.J.).[2]  This memorandum constitutes the findings of fact and conclusion of law to the extent

required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## I.      GENERAL BACKGROUND

In very general terms, the District Court Judgment relates to the relationship between the

Debtor and the A.P. Plaintiffs with respect to the sale and/or marketing of certain purported organic

Italian fruit jams and/or preserves under the trademark "FIORDIFRUTTA," and the Debtor's

infringement of that trademark within the purview of the Lanham Act (as amended, 15 U.S.C.

§§ 1051 *et seq.*).  Background to the foregoing is set forth in ECF No. 55-5 (the "Findings of Fact

and Conclusions of Law" issued by the District Court (as hereafter defined) in the District Court

Action (as hereafter defined), the "Findings") which are incorporated by reference in this part I as

if fully set forth herein.[3]  However, such incorporation is limited to the sole purpose of giving the

reader some context.

---

[1]      References herein to the docket of this adversary proceeding appear in the following
form: "ECF No. __."  References herein to the docket of this chapter 7 case appear in the following
form: "Case ECF No. __."

[2]      That order referred to the "Bankruptcy Judges for this District" *inter alia* "all
proceedings arising under Title 11, U.S.C., or arising in . . . a case under Title 11, U.S.C. . . ."

[3]      Capitalized terms used but not defined herein shall have the respective meanings
ascribed to the same in the Findings.

## II.   THE ADVERSARY PROCEEDING

The A.P. Plaintiffs commenced this adversary proceeding by the filing of a complaint (ECF

No. 1, the "Complaint") on September 8, 2009.  The Complaint is stated in five counts:

Count One:   Collateral estoppel effect of the District Court Judgment with respect to
11 U.S.C. §§ 523(a)(2), 523 (a)(4) and 523(a)(6)

Count Two:   Nondischargeability under 11 U.S.C. § 523(a)(2)(A)

Count Three:   Nondischargeability under 11 U.S.C. § 523(a)(2)(B)

Count Four:   Nondischargeability under 11 U.S.C. § 523(a)(4)

Count Five:   Nondischargeability under 11 U.S.C. § 523(a)(6)[4]

(*See* ECF No. 1.)  The Debtor received his chapter 7 discharge on October 6, 2009.  (*See* Case ECF

No. 31, the "Discharge.")

On October 21, 2009, a Clerk's Entry of Default was issued against the Debtor for failure

to plead or defend.  (*See* ECF No. 11.)  On December 1, 2009, the Debtor (appearing *pro se*)[5] filed

(a) a motion to set aside that default (ECF No. 13) and (b) an answer to the Complaint (ECF No. 15).

The A.P. Plaintiffs filed an objection to the Debtor's motion on December 9, 2009.  (*See* ECF

No. 18.)  On December 14, 2009, the A.P. Plaintiffs filed a motion for default judgment.  (*See* ECF

No. 22.)  A hearing was had on all the default matters on December 30, 2009, and all such matters

were taken under advisement.

On January 20, 2010, the court (Dabrowski, J.) issued an order (Case ECF No. 44) requiring

the Debtor's chapter 7 counsel to represent him in this adversary proceeding.  On January 21, 2010,

---

[4]     Count Five of the Complaint based its claims of "willful and malicious injury" under
Section 523(a)(6) in relevant part on the Debtor's copyright infringement/Lanham Act violations.

[5]     Initially, the Debtor was represented by counsel in his chapter 7 case, but not in this
adversary proceeding.

the court (through the undersigned) reopened the default proceedings pending before it to permit the

Debtor's counsel to file a brief supporting the Debtor's position.  (*See* ECF No. 36.)  Such counsel

filed that brief (*see* ECF No. 42) and also filed further pleadings on the Debtor's behalf. (*See* ECF

Nos. 39, 40, 41.)[6]  Proceedings were reopened by notice dated July 20, 2010.  (*See* ECF No. 45.)

After a hearing on August 25, 2010 with respect to the reopened proceedings, the court disposed of

the pending default matters in a manner favorable to the Debtor.  (*See* ECF Nos. 47, 48, 49, 50.)

The A.P. Plaintiffs filed the S/J Motion (together with a Local Rule 56(a)1 Statement) on

September 14, 2010.  (*See* ECF No. 55.)  The S/J Motion seeks the following relief:

> (1)    on Count One and Count Five of the Complaint, judgment of
> nondischargeability of the District Court Judgment debt based upon the Debtor's
> willful and malicious conduct in violating the Lanham Act and also a declaration that
> the A.P. Plaintiffs' debt in the amount of $1,450,289.80 in attorney's fees is excepted
> from the Discharge; and

> (2)    on Count One and Count Five of the Complaint a judgment of
> nondischargeability of the District Court Judgment debt based upon the Debtor's
> willful and malicious conduct in breaching his fiduciary duties and a declaration that
> the A.P. Plaintiffs' debt in the amount of $1,450,289.80 in attorney's fees is excepted
> from the Discharge; and

> (3)(a) on Count One and Count Four of the Complaint, a judgment of
> nondischargeability of the District Court Judgment Debt and a declaration that the
> A.P. Plaintiffs' debt in the amount of $878,223.67 is excepted from the Discharge;
> or

>  (b)  in the alternative, enter summary judgment as to Count One and
> Count Four as to liability only.

(*See* ECF No. 55.)

The Debtor filed his S/J Objection (together with a Local Rule 56(a)2 Statement) on October

14, 2010.  (*See* ECF No. 60.)  The A.P. Plaintiffs filed a reply to the S/J Objection on October 25,

---

[6]    The A.P. Plaintiffs filed a reply brief and the Debtor filed a response thereto.  (*See* ECF Nos. 43,44.)

2010.  (*See* ECF No. 64.)  After the conclusion of briefing, oral argument was had on the S/J Motion

and the S/J Objection on November 3, 2010, after which the matter was taken under advisement.

## III.    FACTS[7]

On January 9, 2007, Rigoni USA, Inc. ("Rigoni USA2") and Fiordifrutta, LLC (collectively

with Rigoni USA2, the "District Court Plaintiffs") commenced a civil action (the "District Court

Action") captioned *Rigoni USA, Inc., et al. v. Rigoni Di Asiago USA, LLC, et al.*, Case No. 1:07-CV-

20070-AJ, in the United States District Court for the Southern District of Florida (Miami Division)

(the "District Court") against the A.P. Plaintiffs and a related entity.  In their amended complaint

(the "District Court Complaint"), the District Court Plaintiffs alleged that the A.P. Plaintiffs violated

the District Court Plaintiffs' rights in a federally-registered trademark and asserted claims of, among

other things, trademark infringement and unfair competition pursuant to the Lanham Act.  On April

16, 2007, the A.P. Plaintiffs filed in the District Court Action an "Answer, Affirmative Defenses and

Counterclaims to Plaintiffs' Amended Complaint" (ECF No. 55-6 at 11 *et seq.,* including a third-

party complaint against the Debtor, the "Counterclaim") against the District Court Plaintiffs and the

Debtor, alleging, among other things, claims of unfair competition pursuant to the Lanham Act and

breach of fiduciary duty pursuant to Connecticut common law.  On March 25, 2009, following a

three-day bench trial (the "District Court Trial") in the District Court Action before the Honorable

Adalberto Jordan, the District Court entered the District Court Judgment in favor of the A.P.

Plaintiffs on all claims brought by the District Court Plaintiffs.

---

[7]    The facts which follow are either set forth in the A.P. Plaintiffs' Local Rule 56(a)1
Statement (ECF No. 55-2) and are admitted by the Debtor in his Defendant's Local Rule 56(a)2
Statement (ECF No. 60-2), or are otherwise supported by the record.

In addition, the District Court concluded that the Debtor violated the A.P. Plaintiffs' federal

trademark rights and awarded damages against the Debtor and Rigoni USA2 (jointly and severally)

to Rigoni di Asiago under Count III, Count IV and Count VII of the Counterclaim in the amount

of $878,223.67 (the "Damages Award"). (*See* District Court Judgment ¶ 5.) Specifically, the

District Court found, "Mr. Mucci actively and knowingly directed and caused Rigoni USA2 to

engage in the infringing conduct. 'Natural persons, as well as corporations, may be liable for

trademark infringement under the Lanham Act . . . . If an individual actively and knowingly caused

the infringement, he is personally liable.'" (Findings ¶ 111 (citations omitted).) Further, the District

Court determined that the A.P. Plaintiffs were entitled to compensation for their attorney's fees from

the Debtor and Rigoni USA2 as "prevailing part[ies]" pursuant to 15 U.S.C. § 1117(a) (*see* Findings

¶¶ 112, 114; *see also* ECF No. 55-10 ("Order on Attorney's Fees and Costs"))[8]:

> A court has the authority to award attorney's fees to the prevailing party under the
> Lanham Act in "exceptional cases." "The Eleventh Circuit has defined an
> exceptional case as a case that can be characterized as *malicious, fraudulent,
> deliberate, and willful*." In this case, Rigoni USA2 attempted to usurp a trademark
> that it knew was the rightful property of Rigoni di Asiago and continued to sell
> purported FIORDIFRUTTA products after receiving a cease and desist letter from
> the rightful holder of the trademark. *I find this conduct to be malicious, fraudulent,
> deliberate, and willful, and I conclude this to be an exceptional case that entitles
> Rigoni di Asiago to compensation for its attorney's fees.*

(Findings ¶ 114 (emphasis added; citations omitted).)

---

[8]    That judgment (the "Attorney Fee Award") was awarded in the District Court
Judgment to Rigoni di Asiago and to Andrea Rigoni apparently jointly. (*See* ECF No. 55-4 ¶ 10.)
The District Court apparently concluded that Andrea Rigoni also was a "prevailing party" within
the purview of 15 U.S.C. § 1117(a) because he successfully defended against the District Court
Complaint. The District Court appears to have awarded to the A.P. Plaintiffs their aggregate
attorneys fees, leaving to those prevailing parties to apportion the Attorney Fee Award between
themselves as they saw fit.

With respect to the A.P. Plaintiffs' claim of breach of fiduciary duty under Connecticut

common law (Count XIII of the Counterclaim), the District Court entered judgment against the

Debtor in favor of Rigoni di Asiago.  (*See* District Court Judgment ¶ 9.)  Specifically, the District

Court found:

> I conclude that Mr. Mucci owed a fiduciary duty to Rigoni di Asiago and to Mr.
> Rigoni, personally. Under Connecticut law, a fiduciary duty will be found when the
> relationship between the parties entails "a unique degree of trust and confidence one
> of whom has superior knowledge, skill or expertise and is under a duty to represent
> the interests of the other." In this case, Mr. Mucci was the primary representative of
> the Rigoni brand of products in the United States. He was granted wide latitude by
> his Italian partners to conduct incorporate [sic] subsidiaries of the Rigoni company
> and to market and sell Rigoni products. The Rigoni family placed such a degree of
> trust in Mr. Mucci that he was able to register the Rigoni di Asiago's proprietary
> marks in his own name and to fraudulently establish majority control over Rigoni
> USA2 without the knowledge of Mr. Rigoni.
>
> *Having found that Mr. Mucci owed a fiduciary duty to the Rigonis and Rigoni di
> Asiago, I also conclude that he breached that duty with his fraudulent and malicious
> conduct* in incorporating Rigoni USA2 without the knowledge of Mr. Rigoni, in
> giving himself a majority interest in that corporation, and in registering the
> FIORDIFRUTTA trademark in his own name.

(Findings ¶¶ 122, 123 (emphasis added; citation omitted).)

However, the District Court concluded that, although the Debtor was liable for breach of

fiduciary duty and the A.P. Plaintiffs suffered actual loss as a result of his breach, "the compensatory

damages awarded under the Lanham Act adequately compensate the [A.P. Plaintiffs] . . . for all

losses."   (Findings ¶ 124.)   Therefore, under that claim, the District Court awarded the A.P.

Plaintiffs nominal damages in the amount of $1.00.  (*See id.*)  Notwithstanding the absence of an

award of compensatory damages for the Debtor's breach of his fiduciary duties, the District Court

elaborated, "I do find, though, that Mr. Mucci's violation of the rights of Rigoni di Asiago was

*intentional and wanton*, and that punitive damages are warranted . . . ." (Findings ¶ 125 (emphasis

added).)  The District Court ordered the Debtor and Rigoni USA2 (jointly and severally) to pay the

A.P. Plaintiffs' attorney's fees and punitive damages with respect to the breach of fiduciary duty claim in the amount of $1,450,289.80.  (*See* District Court Judgment ¶ 10; ECF No. 55-10 (Order on Attorney's Fees and Costs).)

## IV.   ANALYSIS[9]

### A.   Summary Judgment Standard

"Summary judgment is appropriate only if the pleadings and submissions . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *The Andy Warhol Foundation for Visual Arts, Inc. v. Hayes (In re Hayes),* 183 F.3d 162, 166 (2d Cir. 1999).  *See also* Fed. R. Civ. P. 56(c) (made applicable here by Fed. R. Bankr. P. 7056).  The movant bears the burden of establishing the absence of any genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case.").  The court must view all ambiguities and draw all reasonable inferences in the light most favorable to the nonmovant.  *See Novak v. Blonder (In re Blonder)*, 246 B.R. 147, 150 (Bankr. D. Conn. 2000) (Krechevsky, J.) (citation and internal quotation marks omitted).  Ultimately, the role of the court is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

---

[9]   Because the court herein grants the S/J Motion as to Count One and Count Five of the Complaint, the court (at least for the present) takes no action with respect to the other relief requested in the S/J Motion.

**B.**     <u>**Law of Collateral Estoppel**</u>

Res judicata has two branches: claim preclusion; and collateral estoppel/issue preclusion. *See Taylor v. Sturgell,* 553 U.S. 880, 892 (2008).  Both branches are applied in bankruptcy.  *See Grogan v. Garner,* 498 U.S. 279, 284 n.11 (1991) (issue preclusion applied); *Brown v. Felsen,* 442 U.S. 127 (1979) (claim preclusion applied).  "The fundamental notion of the doctrine of collateral estoppel, or issue preclusion, is that an *issue of law or fact* actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies."  *Ali v. Mukasey,* 529 F.3d 478, 489 (2d Cir. 2008) (citation and internal quotation marks omitted).

> Accordingly, collateral estoppel applies when: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity for litigation in the prior proceeding, and (4) the issues previously litigated were necessary to support a valid and final judgment on the merits.

*Id.* (citation and internal quotation marks omitted).[10]

The party asserting collateral estoppel bears the burden of demonstrating that it is entitled to such relief.  *See Dowling v. United States,* 493 U.S. 342, 350 (1990).

---

[10]     For jurisdictional purposes, the Lanham Act claims in the District Court Complaint are federal claims as to which federal law governs the collateral estoppel/issue preclusion effect of any judgment on them.  *See, e.g., Blonder-Tongue Labs., Inc. v. University of Ill. Found.,* 402 U.S. 313, 324 n.12 (1971) ("This Court has noted, 'It has been held in non-diversity cases since *Erie R. Co. v. Tompkins,* that the federal courts will apply their own rule of res judicata.'").  The parties do not appear to dispute that point.  In any event, both Florida and Connecticut law on collateral estoppel/issue preclusion is substantially similar to relevant federal law.  *See Gambino v. American Guarantee & Liab. Ins. Co.,* No. 3:09-CV-00304 (CFD), 2009 WL 3158151, at *2 (D. Conn. Sept. 28, 2009) (Connecticut law); *see also Stewart Tilghman Fox & Bianchi, P.A. v. Kane (In re Kane),* No. 09-01838-EPK, 2011 WL 165836, at *1-*2 (Bankr. S.D. Fla. Jan. 18, 2011) (Florida law).

### C.        11 U.S.C. § 523(a)(6) (In General)

Section 523(a) provides in relevant part: "A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ."  11 U.S.C.A. § 523(a)(6) (West 2011).  Accordingly, for a debt to be nondischargeable as a "willful and malicious injury" it first must be "willful" within the meaning of Bankruptcy Code § 523(a)(6).  To be "willful," the injury must arise from an intentional tort which is specifically intended to injure the plaintiff.  *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).  "The word 'willful' in [Section 523] (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury."  *Id.*  Bankruptcy Code § 523(a)(6) is limited to intentional torts and does not except negligent or reckless torts from the scope of the discharge.  *Geiger*, 523 U.S. at 61.  "Intentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'"  *Id.* at 61-62.

To be nondischargeable under Section 523(a)(6), the injury also must be "malicious." "[W]illful" and "malicious" are two separate requirements and to conflate the two requirements into one requirement is error.  *See Barboza v. New Form, Inc. (In re Barboza),* 545 F.3d 702, 711-12 (9th Cir. 2008).  To be nondischargeable, "[t]he injury caused by the debtor must also be malicious, meaning 'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.'"  *Ball v. A.O. Smith Corp.,* 451 F.3d 66, 69 (2d Cir. 2006) (citation omitted).  "Malice may be implied 'by the acts and conduct of the debtor in the context of the surrounding circumstances.'"  *Id.* at 69 (citation omitted).

**D.      Collateral Estoppel Effect of Lanham Act Judgments in the Context of 11 U.S.C. § 523(a)(6) (Law/Application of Fact to Law)**

With respect to Section 523(a)(6) "willful[ness]," collateral estoppel/issue preclusion specifically with respect to judgments under the Lanham Act has been analyzed as follows:

> [A] violation of the Lanham Act and a willful and malicious injury are not necessarily synonymous, and that Lanham Act liability may be premised on conduct that is not willful and malicious. Therefore, the principle of collateral estoppel does not automatically operate to render a Lanham Act judgment nondischargeable because it would be possible under the same set of facts to find a violation of the Lanham Act, which does not satisfy the elements of nondischargeability under 11 U.S.C. § 523(a)(6).

> Notwithstanding, this does not mean that a Lanham Act judgment can never have preclusive effect in a § 523(a)(6) nondischargeability proceeding. Rather, collateral estoppel may be appropriate where there is ample support in the record for concluding that the district court based its Lanham Act judgment on the defendant's willful and malicious conduct.

*Louis Vuitton Malletier v. Ortiz (In re Ortiz),* No. 08-00123, 2009 WL 2912497, at *4 (Bankr. D.P.R. June 4, 2009).   In the District Court Action, the District Court rendered the Damages Award against the Debtor under 15 U.S.C. §§ 1117(a)[11] and 1125(a).[12]   (*See Findings* ¶¶ 105 *et seq.*)   A

---

[11]      Section 1117 provides in relevant part as follows:

(a) Profits; damages and costs; attorney fees
When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be

judgment for compensatory damages under Sections 1117(a) and 1125(a) does not by itself establish

the infringer's intent.  That is because intent is not an element of the basic Section 1125(a)

just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. *The court in exceptional cases may award reasonable attorney fees to the prevailing party.*

15 U.S.C.A. § 1117(a) (West 2011) (emphasis added).

[12]      Section 1125 provides in relevant part as follows:

(a) Civil action
(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

(2) As used in this subsection, the term "any person" includes any State, instrumentality of a State or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

(3) In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.

15 U.S.C.A. § 1125(a) (West 2011).

infringement claim. *See Turner Greenberg Assocs., Inc. v. C&C Imports, Inc.,* 320 F.Supp. 2d 1317,

1330 (S.D. Fla. 2004), *aff'd* 128 Fed. App'x. 755 (11th Cir. 2005).[13]

However, in this case "there is ample support in the record for concluding that the [D]istrict

[C]ourt based its Lanham Act judgment on the defendant's willful and malicious conduct," *Ortiz,*

2009 WL 2912497, at *4. That is because the District Court found and/or concluded with respect

to the Attorney Fee Award under Section 1117(a):

> The Eleventh Circuit has defined an exceptional case [justifying a fee award under
> 15 U.S.C. § 1117(a)] as a case that can be characterized as malicious, fraudulent,
> deliberate, and willful. In this case, Rigoni USA 2 attempted to usurp a trademark
> that it knew was the rightful property of Rigoni di Asiago and continued to sell
> purported FIORDIFRUTTA products after receiving a cease and desist letter from
> the rightful holder of the trademark. *I find this conduct to be malicious, fraudulent,
> deliberate, and willful, and I conclude this to be an exceptional case that entitles
> Rigoni di Asiago to compensation for its attorney's fees.*

(Findings ¶ 114 (emphasis added; citations and internal quotation marks omitted.)[14]  Because the

legal standard for Section 1117(a) attorney's fees was stated by the District Court in the conjunctive

(*i.e.,* requiring a finding of "willful" *and* "malicious" *and* "deliberate" (among other things)), all the

findings of  "willful" and "malicious" and "deliberate" were essential to the Attorney Fee Award

and were in no sense dicta. *See Restatement (Second) of Judgments* § 27 cmt. g (1982). *See also*

---

[13]

> In order to succeed in a claim for unfair competition or trademark infringement, the
> plaintiff must establish the following two elements: (1) valid ownership of the mark;
> and (2) the defendant's use of the mark in commerce creates a likelihood of
> confusion among consumers as to the origin of the goods. *See Alliance Metals, Inc.
> of Atlanta v. Hinely Indus., Inc.,* 222 F.3d 895, 906 (11th Cir. 2000).

*Turner Greenberg, supra.*

[14]      The parties have not suggested that "malicious" as used in the Lanham Act context
is not the same concept as "malicious" as used in the Section 523(a)(6) context.

*Dowling v. Finley Assocs., Inc.*, 248 Conn. 364, 378 (1999) (citing comment g with approval). Those

findings not only bring the Attorney Fee Award within the purview of Section 523(a)(6), but the

Damages Award as well.  Accordingly, the court concludes that the foregoing establishes that both

the Damages Award and the Attorney Fee Award were for "willful and malicious injury" within the

purview of Section 523(a)(6).  Therefore, the Debtor is collaterally estopped/precluded from

relitigating the "willful and malicious" issue in this adversary proceeding.

However, the Debtor argues that the foregoing establishes merely "willful" *conduct* and not

the "willful" *injury* required by *Geiger.*  A substantially similar argument made in the Lanham Act

context was rejected by the appellate panel in *Smith v. Entrepreneur Media, Inc.*  (*In re Smith*),

No. 01-02219-A, 2009 WL 6058677 (B.A.P. 9th Cir. Dec. 17, 2009), pursuant to the following

analysis:

> Smith asserts that the intent issue litigated and determined in the trademark
> infringement litigation is not the same as that raised by EMI's § 523(a)(6) claim.
>
> To resolve this issue, we might identify precisely what state of mind is sufficient to
> constitute willful injury under § 523(a)(6), and also determine whether the trademark
> infringement litigation involved that same state-of-mind issue.
>
> . . .
>
> In trademark infringement litigation, . . . intentional infringement is tantamount to
> intentional injury under bankruptcy law.  Unlike in . . . *Geiger*, where the debtor had
> committed medical malpractice, and *In re Su*, [290 F.3d 1140 (9th Cir. 2002),] where
> the debtor had recklessly sped through a red light, it is impossible to separate the
> "conduct" of trademark infringement from the "injury" of trademark infringement
> when considering the defendant's intent. In other words:
>
> Performing a medical procedure and driving an automobile are activities that can be
> executed intentionally, but in a manner that is reckless or negligent with regard to the
> outcome.  On the other hand, activities such as filing a frivolous lawsuit . . . or
> infringing a copyright . . . do not have uncertain or variable outcomes. While a
> medical procedure can result in either healing or harm, and a physician may cause

- 14 -

harm by negligence, copyright infringement is a categorically harmful activity.

> Like intentional copyright infringement, intentional trademark infringement is a "categorically harmful activity."
>
> . . .
>
> Simply put, the intent to infringe and the intent to deprive the mark's owner of the value and benefit of his property are opposite sides of the same coin. In other words, when someone intentionally infringes on the copyright or trademark of another, they subjectively desire to harm property belonging to the mark's owner– that is, they seek to deprive the mark's owner of the benefit and value of his or her property.

*Smith, supra,* at *9-*10 (citation omitted). *Accord Symantec Corp. v. Cristina (In re Cristina),* No. 08-01004-PGH-A, 2011 WL 766966, at *4 (Bankr. S.D. Fla. Feb. 24, 2011).[15] The court here adopts the rationale of *Smith* that an intentional copyright infringement is the equivalent of an "intentional tort" (probably most analogous here to a deliberate conversion) for *Geiger* purposes. Because the District Court found that the instant copyright infringement was "deliberate" (Findings ¶ 114), this court concludes that the resulting injury was "willful" for *Geiger* purposes.

Finally, the Debtor argues that he did not, and did not have the opportunity to, litigate the intent issue at the District Court Trial. That is not true. The Counterclaim asked for the following relief: judgment and order "[d]eeming this case an 'exceptional' case and awarding attorneys fees

---

[15]

> When the injury alleged is copyright infringement, a plaintiff must show that the debtor intentionally infringed the plaintiff's copyright. *Star's Edge, Inc. v. Braun (In re Braun)*, 327 B.R. 447, 450-51 (Bankr. N.D. Cal. 2005). Focusing on the debtor's intent to perform an act– the infringement–is appropriate in this context because unlike other contexts in which a debtor's intentional act may or may not cause injury, intentional copyright infringement does not have "uncertain or variable outcomes." *Id.* In other words, intentional infringement of a copyright or trademark is "tantamount to intentional injury under bankruptcy law" because "it is impossible to separate the 'conduct' of trademark infringement from the 'injury' of trademark infringement when considering the defendant's intent." *Smith v. Entrepreneur Media, Inc.*, 2009 WL 6058677, at *9–10 (9th Cir. BAP 2009).

*Cristina, supra.*

pursuant to 15 U.S.C. § 1117, and finding . . . [the Debtor] . . . liable for such attorneys fees." (ECF

No. 550-7 at 33.)  That put the Debtor on notice that "willful" and "malicious" and "deliberate"

would be at issue. (*Cf.* Findings ¶ 114.)  The A.P. Plaintiffs had made out at least a *prima facie* case

of "willful" and "malicious" and "deliberate" at the District Court Trial. (*Cf. id.*)  The Debtor may

not have come forward with contrary testimony or other proof at the District Court Trial to rebut that

*prima facie* case, but he had an adequate opportunity to do so.  Accordingly, the Debtor is

collaterally estopped/precluded by the District Court's findings of "willful" and "malicious" and

"deliberate" from relitigating those issues in this adversary proceeding.[16]

## V.    CONCLUSION

The S/J Motion is granted as to Count One and Count Five of the Complaint, and the S/J

Objection is overruled  as to Count One and Count Five of the Complaint, all for the reasons set

forth above.  An order will issue scheduling a status conference to consider any other further and

appropriate steps to bring this adversary proceeding to conclusion.

**SO ORDERED.**

Dated: October 14, 2011                                     BY THE COURT

*Lorraine Murphy Weil*
**Lorraine Murphy Weil**
Chief United States Bankruptcy Judge

---

[16]      The court has considered the Debtor's other arguments and concludes that such
arguments are either inapposite or otherwise unpersuasive.  Satisfaction of the remaining
requirements for collateral estoppel/issue preclusion with respect to Count One and Count Five of
the Complaint is undisputed.